## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| PAMELA L. NIXON, KATHY | ) | |
| FERGUSON, PEOPLE CONCERNED | ) | |
| ABOUT CHEMICAL SAFETY, INC., and | ) | CIVIL ACTION NO. 2:15-cv-13331 |
| NATURAL RESOURCES DEFENSE | ) | |
| COUNCIL, INC., | ) | |
| | ) | |
| Proposed Plaintiff-Intervenors, | ) | **MEMORANDUM IN SUPPORT** |
| | ) | **OF MOTION TO INTERVENE** |
| v. | ) | |
| | ) | |
| BAYER CROPSCIENCE LP, | ) | |
| | ) | |
| Defendant. | ) | |

Institute-area residents Pamela Nixon and Kathy Ferguson, along with People Concerned About Chemical Safety, Inc. (PCACS) and Natural Resources Defense Council, Inc. (NRDC) (together, Citizen Plaintiffs), seek to intervene to object to a drastic and unreasonable modification of the consent decree in this case.[1]

The Government and Bayer CropScience LP (Bayer) propose a consent decree modification that would cut Bayer's penalty under the settlement by $1.37 million. Bayer incurred that penalty as a result of numerous Clean Air Act violations at its facility in Institute, West Virginia—violations resulting in a massive explosion that killed two, injured eight, and endangered tens of thousands in surrounding

---

[1] Bayer CropScience LP opposes this motion. The Government takes no position on this motion.

communities. No change in law or fact justifies slashing the price Bayer agreed to pay for its disregard of safety procedures meant to protect its employees and its neighbors.

## BACKGROUND

In the summer of 2008, Bayer was hastening to restart production of a pesticide ingredient at its facility in Institute. Ex. A, Declaration of Vivian Wang (Wang Decl.) Att. 4, U.S. Chem. Safety Bd., Investigation Rep.: Pesticide Chem. Runaway Reaction Pressure Vessel Explosion 34-35 (2011) [hereinafter CSB Rep.]. The company repeatedly deviated from critical safety procedures, ignoring some and manually overriding others. *See* Compl. ¶ 108, ECF No. 3. These breaches culminated in an August 28, 2008, explosion that killed two employees and ignited a fire that burned for over four hours. *Id.* ¶¶ 88-94, 96, 110. Six firefighters and two contractors were treated for possible chemical exposure. CSB Rep. at 7-8. During the fire, Bayer withheld information from local and state emergency responders, delaying the shelter-in-place order eventually issued to 40,000 residents. *Id.* at 47, 84; Compl. ¶¶ 231-32.

The explosion, which was powerful enough to launch a 5,700-pound residue treater from its base and to damage property seven miles away, occurred close to a tank holding several thousand gallons of methyl isocyanate (MIC). CSB Rep. at 2, 22, 24, 40-42. The explosion propelled schrapnel into the tank's blast shield. *Id.* at 88. Had the debris taken a different trajectory, it could have punctured the tank, with potentially dire consequences. *Id.* at 89. MIC is a highly toxic gas that killed

thousands when it was released during a 1984 industrial accident in Bhopal, India. Compl. ¶ 9. For decades, PCACS' predecessor organization had urged Bayer and the facility's previous owners to remove MIC from Institute. *See* Ex. B, Declaration of Pamela Nixon ¶¶ 3-4 (Nixon Decl.). In 2011, community members active in PCACS initiated litigation that resulted in Bayer terminating all manufacture, storage, and transportation of MIC at its Institute facility. Order at 1, *Nye v. Bayer CropScience, LP*, 2:11-cv-00087 (S.D.W. Va. Mar. 18, 2011).

In 2015, the Government initiated this action with a thirteen-count complaint alleging that Bayer's numerous failures to follow safety protocols for extremely hazardous substances violated Clean Air Act section 112(r)(1) and (7), 42 U.S.C. § 7412(r)(1), (7). *See* Compl. ¶¶ 101-238. The Government and Bayer entered into a consent decree that required Bayer to undertake several Supplemental Environmental Projects (SEPs), expected to cost $4.42 million, and to pay $975,000 in civil penalties.[2] Consent Decree ¶¶ 8, 25(a), ECF No. 5; First Modification at 2-3, ECF No. 21-1 [hereinafter 1st Modification]. The cost of the SEPs was a key factor in determining the amount of Bayer's civil penalties. Pursuant to the Environmental Protection Agency's SEP policy, the agency reduced Bayer's civil penalties by up to eighty percent of the expected cost of the SEPs. Declaration of Mary Hunt in Supp. of the United States' Mot. to Enter the Consent Decree ¶¶ 47-48 (Hunt Decl.), ECF No. 7-1; Wang Decl. Att. 3, EPA, Supplemental

---

[2] A March 2017 modification to the consent decree revised the expected cost of the SEPs upward from $4,203,813 to $4,422,978. 1st Modification at 2-3, ECF No. 21-1.

Environmental Projects Policy – 2015 Update at 23-24 [hereinafter EPA SEP Policy]. These penalty mitigation credits lowered Bayer's civil penalties by nearly two million dollars. [3] *See* Hunt Decl. ¶ 48.

Bayer recently discovered that soil contamination will prevent it from completing the most expensive SEP in the consent decree, an expansion of a sump designed to prevent wastewater from the Institute facility from flowing into the Kanawha River. Second Modification of Consent Decree at 1-2, ECF No. 25-1 [hereinafter 2d Modification]; *see also* Consent Decree ¶ 23(a), ECF No. 5. The Government and Bayer propose to replace the $3.1 million sump SEP with the donation of about $1.7 million of equipment to two local fire companies. Consent Decree ¶ 25(a)(i); 2d Modification ¶ 3. This modification would reduce Bayer's SEP costs by $1.37 million, just over twenty-five percent of its total penalty.[4] *See* Hunt Decl. ¶ 42 (describing Bayer's "total penalty" as the civil penalty and SEPs); Order Approving Consent Decree at 14 n.2, ECF No. 18 (same).

On October 12, 2017, PCACS and NRDC, with the support of the NAACP-Charleston Branch, Ohio Valley Environmental Coalition, West Virginia Rivers Coalition, and West Virginia Citizen Action Group, submitted comments to the Department of Justice, objecting to this modification. Wang Decl. Att. 1, Citizen

---

[3] On November 7, 2017, the Government informed Citizen Plaintiffs of the mitigation credits it awarded for the SEPs in the Consent Decree and the new SEP proposed in the Second Modified Consent Decree.

[4] In announcing that it was accepting public comments on the proposed modification, the Government calculated a reduction in Bayer's SEP spending of $1.18 million, using the original, rather than the updated, cost of Bayer's SEPs. 82 Fed. Reg. 42,838, 42,838 (Sept. 12, 2017).

Pls.' Comments. Citizen Plaintiffs do not oppose Bayer's abandonment of the sump SEP or the donation of equipment to local fire departments. They do, however, object to forgiving more than twenty-five percent of the penalty Bayer incurred for causing a deadly and nearly catastrophic explosion. The $1.37 million difference between the sump SEP and the equipment donation should be invested in additional SEPs advancing the health and safety of the community, such as a public health study of Kanawha Valley residents or an evacuation route for Institute. *Id.* at 4-6.

## ARGUMENT

### I.    Citizen Plaintiffs have an unconditional statutory right to intervene in opposition to the proposed modification

"On timely motion, the court must permit anyone to intervene who . . . is given an unconditional right to intervene by a federal statute . . . ." Fed. R. Civ. P. 24(a)(1). Citizen Plaintiffs are entitled to intervene as of right because they (1) have Article III standing; (2) have an unconditional right to intervene under section 304 of the Clean Air Act, 42 U.S.C. § 7604; and (3) have timely filed this motion.

### A.    Citizen Plaintiffs have standing

PCACS President Pamela Nixon, Institute resident Kathy Ferguson, and NRDC member Deborah Klimek have standing to sue because they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable decision." *Hill v.*

*Coggins*, 867 F.3d 499, 505 (4th Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)).[5]

All three individuals live near the Institute facility and suffered concrete and particularized injuries as a result of the 2008 explosion. For instance, after a decade of dormancy, Ms. Nixon's auto-immune symptoms re-emerged just weeks after the four-hour fire at Bayer's facility. Nixon Decl. ¶¶ 15-16. Ms. Nixon has a "reasonable fear" that the blast and fire exposed her to toxic chemicals, causing her symptoms to return. *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir. 2000); *Dodge v. Mirant Mid-Atl., LLC*, 732 F. Supp. 2d 578, 584 (D. Md. 2010) (plaintiffs injured by exposure to defendant's unlawful air emissions); *see also* CSB Rep. at 7-8, 74-75 (reporting that firefighters responding to the blaze were treated for chemical exposure and that air monitors at the plant were either not functioning or unlikely to detect a release of chemicals).

Similarly, Ms. Ferguson has a reasonable fear that exposure to chemicals released from the blast contributed to the death of her mother. Ms. Ferguson's mother was at home in Institute when the explosion knocked her and her husband off their couch. Ex. C, Declaration of Kathy Ferguson ¶ 17 (Ferguson Decl.). She fell ill immediately after the incident, attributing her sickness to chemical exposure. *Id.* ¶ 18. She passed away seven weeks later. *Id.*

---

[5] Because Citizen Plaintiffs seek different relief than that sought by the Government, at least one Citizen Plaintiff must have standing. *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017).

Ms. Nixon, Ms. Ferguson, and Dr. Klimek were extremely frightened upon learning about the explosion and fire at the Institute facility. Nixon Decl. ¶¶ 10-14; Ferguson Decl. ¶¶ 14-15; Ex. E, Declaration of Dr. Deborah Klimek ¶¶ 4-5 (Klimek Decl.). And reasonably so: They knew that Bayer was storing a lethal gas onsite and that an intense fire was sending plumes of smoke into surrounding communities. Bayer's withholding of critical safety information from emergency responders delayed the shelter-in-place order ultimately issued for the area where Ms. Nixon and Dr. Klimek live. *See* CSB Rep. at 84; Compl. ¶¶ 231-32. The delay in issuing instructions about how residents could protect themselves and their families exacerbated Ms. Nixon's and Dr. Klimek's confusion and fear, as well as their risk of harm. Nixon Decl. ¶¶ 10-14; Klimek Decl. ¶ 4.

The proposed modification to the consent decree threatens injury to Ms. Nixon, Ms. Ferguson, and Dr. Klimek. That modification would significantly lower Bayer's penalty, decreasing its deterrent effect, and increasing the likelihood that Bayer and other companies subject to Clean Air Act section 112(r) will commit future violations. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185-86 (2000) (discussing the deterrent value of civil penalties); *see also 1000 Friends of Md. v. Browner*, 265 F.3d 216, 225 (4th Cir. 2001) (holding that plaintiffs were injured by potential exposure to future air emissions). The reduction in spending on environmentally beneficial projects in their community would also harm Ms. Nixon, Ms. Ferguson, and Dr. Klimek.

These injuries are fairly traceable to Bayer's Clean Air Act violations and the proposed modification. They are also redressable because the Court can reject the parties' proposal to slash Bayer's total payment obligation by $1.37 million. Doing so would preserve the deterrent value of this enforcement action and help prevent future violations. *See Laidlaw*, 528 U.S. at 185-86 (finding that intervenors' injuries from Clean Water Act violations were redressable because of the deterrent effect of civil penalties). In addition, if the Court refuses to grant the proposed modification, the Government and Bayer could agree that Bayer will fund additional SEPs in the region, such as the public health study or evacuation route proposed by Citizen Plaintiffs. Citizen Pls.' Comments at 4-6; s*ee also United States v. LTV Steel Co.*, 187 F.R.D. 522, 526 (E.D. Pa. 1998) (finding that plaintiffs' injuries were redressable in part because EPA could opt to put civil penalties from a Clean Air Act enforcement action into a mitigation fund).

NRDC has standing because its members, including Dr. Klimek, have standing to sue in their own right, the environmental and public health interests this suit seeks to protect are germane to NRDC's purposes, and neither the claims asserted nor the relief requested requires the participation of individual members in the lawsuit. *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1970); Ex. D, Declaration of Gina Trujillo ¶¶ 5-7. Similarly, although PCACS is not a membership organization, it can sue on behalf of the Kanawha Valley residents for whom it provides a means to "express [residents'] collective views and protect

their collective interests" with respect to risks from toxic chemicals. *Hunt*, 432 U.S. at 345; Nixon Decl. ¶¶ 3-9.

Consequently, Citizen Plaintiffs have standing to intervene to oppose the proposed modification. *See United States v. Arch Coal, Inc.*, No. CIV.A. 2:11-0133, 2011 WL 2493072, at *10 (S.D.W. Va. June 22, 2011) (holding that citizen organizations have standing to intervene to object to the civil penalty and pollution reduction measures in a Clean Water Act consent decree).

### B.   Clean Air Act section 304 grants Citizen Plaintiffs an unconditional statutory right to intervene

Clean Air Act section 304 authorizes citizens to sue "any person" for violations of "an emission standard or limitation." 42 U.S.C. § 7604(a)(1). The federal government's diligent prosecution of such violations may bar citizen suits, *id.* § 7604(b)(1)(B), but it does not block citizen involvement in the government's enforcement action. The Act provides that "any person may intervene as a matter of right" in government suits to enforce emission standards or limitations. *Id.*

The first twelve counts of the Government's Complaint allege violations of Clean Air Act section 112(r)(7), 42 U.S.C. § 7412(r)(7), and its implementing regulations, 40 C.F.R. pt. 168. Compl. ¶¶ 101-233. Section 112(r)(7)'s requirements, which relate to risk management plans for facilities handling extremely hazardous substances, are "emission standards" enforceable through citizen suits. 42 U.S.C. § 7412(r)(7)(E) ("Each regulation or requirement under this subsection shall for purposes of section[] . . . 7604 . . . be treated as a standard in effect under subsection (d) of this section."); *id.* § 7412(d) (emission standards for hazardous air pollutants).

Citizen Plaintiffs, therefore, have an unconditional statutory right to intervene in this action. *See United States v. Blue Lake Power, LLC*, 215 F. Supp. 3d 838, 841-42 (N.D. Cal. 2016) (granting intervention under Clean Air Act section 304(b)(1)(B)); *United States v. Duke Energy Corp.*, 171 F. Supp. 2d 560, 565 (M.D.N.C. 2001) (same); *see also Arch Coal*, 2011 WL 2493072, at *10 (granting Rule 24(a)(1) intervention to citizen organizations under a similar provision of the Clean Water Act).

### C.     Citizen Plaintiffs' motion is timely

In assessing the timeliness of a motion to intervene as of right under Rule 24(a), courts look to three factors: "first, how far the underlying suit has progressed; second, the prejudice any resulting delay might cause the other parties; and third, why the movant was tardy in filing its motion." *Alt v. EPA*, 758 F.3d 588, 591 (4th Cir. 2014). Prejudice is the most important factor. *Spring Constr. Co. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980). "[W]here intervention is sought as a matter of right, courts should be reluctant to dismiss a request for intervention as untimely inasmuch as the proposed intervenor may be seriously harmed if intervention is denied*." United States v. Exxonmobil Corp.*, 264 F.R.D. 242, 248-49 (N.D.W. Va. 2010) (quoting *Local 1829 of United Mine Workers v. Island Creek Coal Co.*, 157 F.R.D. 380, 383 (N.D.W. Va. 1994)).

Citizen Plaintiffs filed this motion as soon as it became clear that the Government was no longer adequately protecting their interests in this case. *Cf. Hill v. W. Elec. Co.*, 672 F.2d 381, 386 (4th Cir. 1982) (intervention motion in a class

action was timely when filed "as soon as it became clear . . . that the interests of the unnamed class members would no longer be protected by the named class representatives" (quoting *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977))). The pending proposal to shrink Bayer's penalty is the first indication that the Government's interests have diverged from Citizen Plaintiffs' interests. "[I]t would be a wasteful policy to require a potential party to an environmental action such as this one to intervene at a time when it is satisfied with the progress of the case merely in order to preserve its right to object to later, unsatisfactory modifications." *United States v. U.S. Steel Corp.*, 87 F.R.D. 709, 710-11 (W.D. Pa. 1980) (granting intervention to oppose a consent decree modification).

Most importantly, Citizen Plaintiffs' intervention for the narrow purpose of objecting to the reduction in Bayer's SEP costs will not prejudice the other parties. Regardless of whether Citizen Plaintiffs participate, the Court will have to evaluate whether the modification is "suitably tailored to the changed circumstances" cited by the parties. *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 404 F.3d 821, 827 (4th Cir. 2005) (internal quotation marks omitted); *infra*, § IV. Citizen Plaintiffs' participation will assist the Court in making that determination and so will not unduly delay the proceedings. *See Exxonmobil Corp.*, 264 F.R.D. at 248-49.

Because Citizen Plaintiffs have timely invoked their unconditional statutory right to intervene, the Court should grant this motion.

## II.     Citizen Plaintiffs are also entitled to intervene as of right under Rule 24(a)(2)

A court must grant intervenor status under Rule 24(a)(2) when the movant timely establishes "(1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that the [movant]'s interest is not adequately represented by existing parties to the litigation." *Teague v. Bakker*, 931 F.2d 259, 260-61 (4th Cir. 1991). Citizen Plaintiffs satisfy each of these criteria.

**1.** Citizen Plaintiffs, who live and work near the Institute facility, have a "significantly protectable interest" in this case. *Id.* at 261 (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971)). The Court's decision on the proposed modification will directly affect the consent decree's deterrent value, and, by extension, Citizen Plaintiffs' health and safety interests. *Supra*, § I.A; *see Cal. Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 307 (E.D. Cal. 2011). These interests, sufficient to confer Article III standing, also satisfy Rule 24(a)(2). *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003).

**2.** The proposed modification would impair Citizen Plaintiffs' interests. Cutting Bayer's monetary obligation by a quarter would diminish the consent decree's deterrent effect, increase the likelihood of future violations, and reduce spending on environmentally beneficial projects in the community. *Supra* § I.A; *cf. Cal. Dump Truck Owners*, 275 F.R.D. at 307.

**3.** Finally, the Government does not adequately represent Citizen Plaintiffs' interests. Because the Government and Citizen Plaintiffs "seek divergent

objectives" with respect to the consent decree, Citizen Plaintiffs need only make a "modest showing of inadequacy." *Stuart v. Huff*, 706 F.3d 345, 352 (4th Cir. 2013). The Government's support for a drastic reduction in Bayer's penalty demonstrates that it no longer adequately represents Citizen Plaintiffs' interests. *See In re Sierra Club*, 945 F.2d 776, 780 (4th Cir. 1991) (holding that a state agency did not adequately represent an environmental organization where their legal positions might diverge with respect to remedy).

### III. If not granted intervention as of right, Citizen Plaintiffs should be granted permissive intervention, or the Court should treat this motion as an amicus submission

Rule 24 allows the Court to grant intervention to a timely movant who "has a claim or defense that shares with the main action a common question of law or fact," and whose participation would not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1)(B), (b)(3). Citizen Plaintiffs qualify for permissive intervention because they allege the same facts and Clean Air Act violations as the Government and their participation will assist, rather than unduly delay, the Court's evaluation of the proposed modification. *Supra*, § I.C.

If not granted leave to intervene, Citizen Plaintiffs request that the Court treat this motion as an amicus curiae submission and that the Court allow Citizen Plaintiffs to be heard at any hearing on the proposed modification. The Court has broad discretion to allow the participation of amici. *Ohio Valley Envtl. Coal., Inc. v. McCarthy*, 313 F.R.D. 10, 32 (S.D.W. Va. 2015). For the reasons described above,

Citizen Plaintiffs can assist the Court in evaluating the proposed modification, and so should be allowed to participate as amici. *Supra* at 11.

## IV.    The Court should reject the proposed modification

The proposed modification is neither "substantively fair" nor "suitably tailored" to the changed circumstance that Bayer proffers as the reason for abandoning the sump SEP. Even if expansion of a wastewater overflow reservoir is no longer feasible, *see* 2d Modification at 2, an appropriate modification would replace that project with another project (or projects) of equal or greater value. The parties instead seek to reduce the total cost of Bayer's SEPs by $1.37 million, about one third of Bayer's total SEP spending and one quarter of Bayer's total monetary obligation.

While the purchase of equipment for emergency responders is a worthwhile project, the Court should not approve a modification that lowers the total value of Bayer's SEP obligations—obligations imposed in response to Bayer's "numerous, grave safety deficiencies" and violations of law, which caused the death of two workers and the endangerment of tens of thousands of residents. *See* Order Approving Consent Decree at 3, 14 (citing Mannan Rep., pp. 16-20.); Hunt Decl. ¶ 9; Shabazz Decl. ¶ 7, ECF No. 7-3; Compl. ¶¶ 89-97. Citizen Plaintiffs urge the Court to require the parties to adopt additional SEPs that bring the total value of SEPs to the originally agreed-upon level, which would better preserve the essence of the original agreement and further the principles of corrective justice and accountability for Bayer's violations of Clean Air Act section 112(r).

### A. Courts must ensure that consent decrees are substantively fair and that modifications are suitably tailored to changed circumstances

A court may approve a consent decree only if the decree is "fair, adequate, and reasonable," and not "against the public interest." *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999) (quoting *United States v. Colorado*, 937 F.2d 505, 509 (10th Cir. 1991)). A court assesses fairness "both from a procedural and substantive standpoint." *United States v. E.I. du Pont de Nemours & Co.*, No. 5:16-cv-00082, 2017 WL 3220449, at *1, *13 (W.D. Va. July 28, 2017) (evaluating proposal to address natural resource damage relating to defendant's violation of the Resource Conservation and Recovery Act). Substantive fairness is evaluated based on "concepts of corrective justice and accountability: a party should bear the cost of the harm for which it is legally responsible." *Id.* at *14 (quoting *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 87 (1st Cir. 1990)); *see also L.J. v. Wilbon*, 633 F.3d 297, 311 (4th Cir. 2011); *United States v. Arch Coal, Inc.*, 829 F. Supp. 2d 408, 415 (S.D.W. Va. 2011). For instance, in *E.I. du Pont*, the district court considered DuPont's responsibility for mercury contamination and resulting damage to the local river ecosystem in concluding that "placing the burden on DuPont to compensate for the natural resource damages is substantively fair." 2017 WL 3220449, at *14

The party seeking modification "bears the burden of establishing that a significant change in circumstances warrants revision of the decree." *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 383 (1992); *see also Thompson*, 404 F.3d

at 827. Before granting the request, the court must "consider whether the proposed modification is suitably tailored" to "resolve the problems created by the change in circumstances." *Rufo*, 502 U.S. at 383, 391. The parties here fail to establish that reducing Bayer's payment obligation is a suitably tailored modification of a consent decree intended to hold Bayer accountable for numerous unlawful acts that resulted in the death of workers and endangerment of community members.

### B. The original decree's SEPs and civil penalties were developed in response to Bayer's serious violations of the Clean Air Act

The original consent decree, described above, required Bayer to undertake a set of SEPs and pay a civil penalty of $975,000—far less than the civil penalty the Government could have sought.[6] The most significant SEP, the West Sump Expansion SEP, involved the installation of an 840,000-gallon collection sump to provide surge capacity and prevent the overflow of raw chemical wastewater into the Kanawha River. *See* Consent Decree App. B at 1, ECF No. 19-1. Bayer also agreed to other SEPs providing emergency response equipment, cleaning out hazardous chemicals from school science labs, and training emergency responders. Consent Decree ¶ 23; Consent Decree App. E at 1, ECF No. 19-1.

---

[6] Under the Clean Air Act and Federal Civil Penalties Inflation Adjustment Act, as amended, Bayer was subject to a civil penalty of $32,500 per day for each violation occurring between March 2004 and January 2009, and $37,500 per day for each violation occurring after January 2009. Compl. ¶¶ 23–24, 240–242 ("relief sought"). Given that the Government's Complaint contains thirteen counts, *id.* ¶¶ 101-238, many of which encompass multiple violations, *see, e.g., id.* ¶ 108, Bayer could have been assessed a far larger civil penalty than what it negotiated under the consent decree.

In approving the consent decree, this Court noted the gravity of Bayer's Clean Air Act violations. Order Approving Consent Decree at 14. The corporation's unlawful and reckless disregard for safety bears emphasis now, as the Court evaluates the proposed modification. The Complaint and Consent Decree here did not stem from a mere recordkeeping error or one-time exceedance of an emissions limitation. The U.S. Chemical Safety Board's investigation of the Institute accident revealed "significant lapses" in Bayer's hazardous chemicals handling and operation. Wang Decl. Att. 2, Test. of John S. Bresland, Chairman & Chief Exec. Officer of U.S. Chem. Safety Bd., to House Comm. on Energy and Commerce, Subcomm. on Oversight and Investigations at 1-3 (Apr. 21, 2009) (Bresland Test.); *see also* Order Approving Consent Decree at 3. "[L]ongstanding equipment problems" caused workers to deviate from written operating procedures. Bresland Test. at 2. The heater for the residue treater that exploded was "known" to be undersized, which "regularly forced" workers to bypass three "critical safety interlocks" during startup, increasing the chance of "dangerously overloading" the treater with volatile chemicals. *Id.*

The explosion and resulting chemical release and fire killed two workers and injured others. *Id.*; CSB Rep. at 40; Compl. ¶ 2. The runaway chemical reaction sent a 5,700-pound residue treater vessel careening across the factory floor, narrowly missing a storage tank located eighty feet away that contained almost seven tons of MIC. CSB Rep. at 40-43. Metal projectiles weighing up to a hundred pounds flew in all directions, with some striking the MIC tank's blast shield. Had the MIC tank

been damaged, the results could have been catastrophic. *Id.* In the immediate aftermath of the explosion, Bayer withheld information from emergency responders, which delayed issuance of a shelter-in-place warning. *Id.* at 43-48.

Under the terms of the original consent decree, which was updated this March, the SEPs collectively cost $4.42 million. 1st Modification at 2–3. A consent decree that requires a multinational corporation with annual revenue in the tens of billions of dollars to undertake approximately $4 million worth of projects and pay a civil penalty of less than $1 million—after killing two workers and placing tens of thousands of residents at risk—is already a generous settlement for Bayer in light of the need for "corrective justice." *Cannons Eng'g Corp.*, 899 F.2d at 87.

### C. The proposed modification, which substantially reduces Bayer's obligations, is not "suitably tailored" to the need to discontinue work on the sump SEP

The parties now seek to replace the sump SEP with a far less costly SEP that entails the purchase of emergency response equipment for two local volunteer fire stations. The proposed second modification, if adopted, will lower the total value of the SEPs to $3.05 million. 2d Modification ¶ 2. This represents a $1.37 million reduction in Bayer's penalty.

The proposed modification explains that Bayer "encountered soil contamination" that "significantly complicated the construction" of the sump expansion. *Id.* at 2. But neither the proposal nor the Federal Register Notice provides a sound basis for reducing Bayer's SEP costs by $1.37 million—roughly a quarter of the total amount the corporation originally committed to spend.

Decreasing Bayer's obligations is not an equitable modification of an agreement intended to hold Bayer accountable for numerous serious Clean Air Act violations. Nor is it "suitably tailored" to the changed circumstances. Even if soil contamination is a valid reason for discontinuing the sump SEP, it is not a basis for reducing Bayer's original commitments to undertake projects to benefit the community affected by the facility's release of hazardous chemicals into the environment.

In another Clean Air Act case, this Court has criticized parties for providing insufficient reasoning in support of a proposed consent decree. The decision explained that the allegations are "quite serious," involving the "preventable releases of hazardous substances, multiple failures to report the same, and the death of at least one worker due to safety and maintenance lapses." *United States v. E.I. DuPont de Nemours & Co.*, Civil Action No. 2:14-25143, 2015 WL 1887259, at *7 (S.D.W. Va. Apr. 24, 2015). Because the United States did not explain how it arrived at the calculated civil penalty, the Court could not approve the consent decree based on the information before it. *See id.* The proposed modification here suffers from the same defect: even if the emergency equipment SEP "advance[s] the objectives of chemical accident prevention laws," 2d Modification at 2, the parties have given no explanation for the more than $1 million decrease in total value of the SEPs.

As the D.C. Circuit explained in rejecting a proposed consent decree modification, the modification must still "preserve the essence of the parties'

bargain." *Pigford v. Veneman*, 292 F.3d 918, 927 (D.C. Cir. 2002). This modification fails to do so. In the consent decree, Bayer agreed to pay a civil penalty of $975,000 and undertake SEPs costing $4.23 million, later revised upwards to $4.42 million. Consent Decree ¶¶ 8, 25(a); 1st Modification at 2-3. Consequently, the expense of the SEPs comprised the bulk of Bayer's total penalty under the settlement. Reducing that obligation by $1.37 million dollars—over a third of Bayer's SEP costs and a quarter of its total penalty—fundamentally alters the bargain struck in the consent decree. The modification significantly weakens the settlement, reducing both its deterrent effect and spending on environmentally beneficial projects in the affected community. It is not a suitably tailored modification, and it should be rejected.

### D. Rather than give Bayer a windfall, the Court should require the parties to adopt additional SEPs, in consultation with the affected communities

Bayer should be required to fund a project, or multiple projects, valued at minimum at the amount Bayer saves by abandoning the sump SEP. In their comments to the Federal Register notice of proposed modification, PCACS and NRDC suggested two projects that would be valuable for the community. Citizen Pls.' Comments at 4-6. The first is an independent public health study that would provide data needed to evaluate the long-term consequences of emissions from the chemical facilities in and near Institute. *Id.* at 4-5; *see also* Nixon Decl. ¶¶ 20-21; Ferguson Decl. ¶¶ 19-22. Another potential SEP would design an alternate emergency escape plan and route for the residents of Institute, in the event of

another accident. Citizen Pls.' Comments at 5-6; *see also* Nixon Decl. ¶¶ 22-23; Ferguson Decl. ¶¶ 23-26.

Both a public health study SEP and an emergency evacuation plan SEP are consistent with the Clean Air Act's objectives of protecting health and managing risks of exposure to hazardous chemicals. The Court should require Bayer and the Government, when developing and implementing additional SEPs, to consult with community members affected by Bayer's Clean Air Act violations. *See* EPA SEP Policy at 18-19 (encouraging outreach to and collaboration with affected communities in developing SEPs); *Md. Dep't of the Env't v. GenOn Ash Mgmt., LLC*, No. CIV. PJM 10-0826, 2013 WL 2637475, at *4 (D. Md. June 11, 2013) (adopting revised decree in Clean Air Act case and noting that, "importantly," the modified decree would provide environmental groups and the community with "the opportunity to comment with respect to future activities at these sites").

As it stands, the proposed modification "weakens, not strengthens, the likelihood for compliance" with statutory mandates, whether at the Institute facility or the other facilities operated by Bayer. *Ohio Valley Envtl. Coal., Inc. v. Hobet Min., LLC*, 723 F. Supp. 2d 886, 911 (S.D.W. Va. 2010). Citizen Plaintiffs urge the Court to reject the proposed modification and instruct the Government and Bayer to evaluate additional SEPs, including the projects proposed by the community members.

Finally, Citizen Plaintiffs request that the Court hold a fairness hearing on the proposed modification. Modifications to the consent decree implicate the

interests of Citizen Plaintiffs and nonparty community members. A hearing would help ensure that any modification is both procedurally and substantively fair. *See, e.g.*, *E.I. du Pont*, 2017 WL 3220449, at *13 (discussing public hearing to solicit comments on proposed decree addressing natural resources damage from mercury contamination).

## CONCLUSION

Reducing Bayer's penalty under the consent decree does not square with principles of corrective justice. Moreover, the proposed modification (a less expensive SEP for emergency response equipment) is not tailored to the changed circumstance (soil contamination at the sump site). Bayer's repeated violations of law had lethal effects, and the Court should not approve any modification that weakens the bargain originally struck between the Government and Bayer.

For the foregoing reasons, we respectfully request that the Court grant Citizen Plaintiffs' motion to intervene, reject the proposed Second Modification, and instruct the parties to formulate a modified decree that fully accounts for the gravity of Bayer's repeated violations of law.

Respectfully submitted,

William V. DePaulo, Esq. WVSB #995
122 N. Court Street, Suite 300
Lewisburg, WV 24901
Tel: 304-342-5588
Fax: 866-850-1501
william.depaulo@gmail.com
*Counsel for Proposed Plaintiff-Intervenors*

Peter J. DeMarco, DC Bar No. 1029471
1152 15th St. NW, Suite 300
Washington, DC 20005
Tel: 202-513-6267
pdemarco@nrdc.org

Vivian H.W. Wang, NY Bar No. 4748182
40 West 20th Street, 11th Floor
New York, NY 10011
Tel: 212-727-4477
vwang@nrdc.org

*Counsel for Natural Resources Defense Council, Inc.*

## CERTIFICATE OF SERVICE

On November 8, 2017, I electronically submitted the foregoing Memorandum in Support of Motion to Intervene with the clerk of court for the U.S. District Court, Southern District of West Virginia, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

William V. DePaulo, Esq. WVSB #995
122 N. Court Street, Suite 300
Lewisburg, WV 24901
Tel: 304-342-5588
Fax: 866-850-1501
william.depaulo@gmail.com